UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:05-CR-51(01)RM |
| | ) | |
| JAMES ALLEN NICHOLS | ) | |

OPINION and ORDER

On April 7, 2005, James Nichols was charged in a 20-count indictment with sexual exploitation of children (Counts 1-16), possession/receipt of child pornography (Counts 17-18), and possession with intent to sell child pornography (Counts 19-20). After the trial was continued to August 15, Mr. Nichols filed a motion seeking the suppression of all items seized pursuant to a search warrant issued May 28, 2004 by United States Magistrate Judge Andrew P. Rodovich. Mr. Nichols's suppression motion is based on his contention that his Fourth Amendment rights were violated when federal agents exceeded the scope of an April 23, 2004 search warrant and then used "the tainted information gleaned during [the April 23] illegal search and seizure" to obtain the May 28 warrant. Deft. Memo., at 4. The government has filed its opposition to Mr. Nichols's motion. Because the facts set forth in Mr. Nichols's motion would not entitle him to a suppression order, the court needs no evidentiary hearing. See, e.g., United States v. Villegas, 388 F.3d 317 (7th Cir. 2004).

The government obtained a search warrant on April 23, 2004 in connection with a suspicious fire at the premises of KompuDoc, a business owned by James

Nichols. Fire investigators and a trained dog discovered the presence of possible accelerants at various locations in the building and also discovered in plain view numerous unlabeled CDs/DVDs, DVD rewrite devices, and three CDs/DVDs that investigators believed to have been pirated. The resulting warrant, which related to possible violations of federal arson and copyright statutes, provided for the search and seizure of "sample materials near or at the burn origin site, to include carpeting, wood, and other materials present at the site," "correspondence, books, records, receipts, notes, ledgers, personal books and papers . . . relating to the financial state of the business . . . and the illegal possession and distribution of copyrighted materials," "any computers . . . that were or may have been used as instrumentalities of the alleged crime," "other materials and equipment used to manufacture movies and/or DVDs from original source codes," and "records of sales or purchases of illegal copies of trademark/patent protected titles." The term "computer" included desktop computers, laptop computers, and storage devices such as hard drives, zip disks, CD-ROMs, and floppy disks, as well as

- a. Electronically stored data, files or digital information, stored on the computers hard drive, software, or associated media to include diskettes, tapes, CD Roms, DVDs, Zip Disks, Jazz Disks or any peripheral storage devices to include PDA devices, external/internal storage devices and Cameras.
- b. Deleted, altered, damaged or corrupted data stored in the same areas stated above.
- c. Computer system information and file structure data.
- d. Recovered software to include system operations software and device management software.
- e. Electronically stored information verifying ownership of the aforementioned computer system and associated software including registration information.

>    f.   Any records, notes, passwords or personal identification numbers (PINs), names, addresses, telephone numbers, correspondence, emails and chat logs relating to the aforementioned violations.

Mot. to Suppress, Exh. A.

United States Secret Service Special Agent Michael A. Bush was assigned to assist the Bureau of Alcohol, Tobacco, Firearms, and Explosives in its investigation of possible copyright violations by Mr. Nichols. The government reports that Agent Bush examined the relevant items seized pursuant to the April 23 warrant, including seven hard drives, a backup tape, two floppy disks, one data cartridge, one USB drive, one flash card, one videotape, one minidisk, and approximately 300 CDs/DVDs. Agent Bush says that in his search for copyright violations, he reviewed the titles, filenames, and contents of the seized CDs/DVDs and discovered video files and still images that appeared to contain sexually explicit images of children. Agent Bush halted his review of the other computers and electronic media seized and sought a search warrant for a follow-up investigation relating to sexual exploitation and child pornography charges. That warrant was issued on May 28, 2004.

Mr. Nichols claims federal agents exceeded the scope of the April 23 warrant when they opened files that didn't pertain to the arson and copyright investigations. Mr. Nichols relies on <u>United States v. Carey</u>, 172 F.3d 1268 (10th Cir. 1999), in which a detective searching computer files for evidence of drug trafficking activities discovered files containing child pornography. Upon finding

3

the first image in a file labeled ".JPG," the detective continued to open similarly-labeled files where he uncovered additional child pornography. The evidence of child pornography was suppressed based on the Tenth Circuit's determination that the detective had exceeded the scope of the warrant when he continued to open ".JPG" files rather than getting a warrant to search the other similarly-labeled files. The court noted that the detective's testimony "made clear" that as he opened each of the ".JPG" files, he was not looking for evidence of drug trafficking, but was searching for more child pornography, and he only "went back" to searching for drug-related documents after conducting a five hour search of the child pornography files. 172 F.3d at 1272-1273. The court concluded that the agent "was in the same position as the officers had been when they first wanted to search the contents of the computers for drug related evidence. They were aware they had to obtain a search warrant and did so. These circumstances suggest [the detective] knew clearly he was acting without judicial authority when he abandoned his search for evidence of drug dealing." 172 F.3d at 1273. Mr. Nichols argues the evidence of child pornography discovered in his files should likewise be suppressed because the files containing those images didn't pertain to the government's arson or copyright infringement investigations.

Execution of the April 23 search warrant permitted the government to seize and search "items named in the warrant," as well as "evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine." Russell v. Harms, 397 F.3d 458, 465 (7th Cir. 2005). The plain view doctrine

4

applies if the officer "is lawfully present," "an item not named in the warrant is in the plain view of the officer," and "the incriminating nature of the item is immediately apparent." United States v. Raney, 342 F.3d 551, 559 (7th Cir. 2003). "The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has 'probable cause to believe that the item is linked to criminal activity.'" Russell v. Harms, 397 F.3d at 465 (*quoting* United States v. Bruce, 109 F.3d 323, 328 (7th Cir. 1997)); *see also* United States v. Cellitti, 387 F.3d 618, 624 (7th Cir. 2004) ("For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity.").

The April 23 warrant permitted agents to seize and examine data, files, and digital information stored on computer hard drives, CDs, DVDs, Zip discs, Jazz Discs, external/internal storage devices, and cameras for evidence of arson and copyright violations. Agent Bush stated that on May 12, while examining the items seized for "copies of pirated movies," that is, evidence of copyright violations, he discovered "numerous video files and still images" that, based on his training and experience, he believed to be child pornography. *See* Mot. to Suppress, Exh. C. Mr. Nichols hasn't argued that Agent Bush's examination of the seized items was unlawful or invalid. Mr. Nichols hasn't argued that the files containing pornography weren't in plain view or that there was some other reason Agent

5

Bush shouldn't have discovered them in his examination of the seized items.[1] Nor has Mr. Nichols alleged or argued that the incriminating nature of the pornographic images wasn't "immediately apparent" to Agent Bush.

Agent Bush, unlike the detective in Carey, didn't state that he abandoned his search for pirated movies; instead, Agent Bush stated he discovered evidence of child pornography during his search of the CDs and DVDs for evidence of copyright infringement. And Agent Bush, unlike the detective in Carey, properly obtained a warrant to conduct a lawful search of the seized items for evidence of child pornography. Mr. Nichols hasn't carried his burden of demonstrating that his Fourth Amendment rights were violated, and, accordingly, his motion to suppress the items seized pursuant to the May 28, 2004 search warrant [docket # 27] is DENIED.

SO ORDERED.

---

[1] Mr. Nichols hasn't alleged that his files contained distinguishing labels similar to those in Carey, i.e., ".JPG", or that the files were organized in some fashion that would allow agents to tell without examining each file that evidence of copyright infringement could be found in some files but not in others.

ENTERED:   July 20, 2005   

                                       /s/ Robert L. Miller, Jr.   
                                    Chief Judge  
                                    United States District Court